ALEXANDER R. SHEPHERD, ANNA V. MOSS, AND ISAAC T. FILBERT

*vs.*

JOSEPH F. BROWN, MARIA· V. BROWN AND ALEXANDER SHARP.

EQUITY. No. 5319.

{ Decided July 5, 1884.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and JAMES sitting.

1. A judgment creditor filed a creditor's bill for the purpose of subjecting the equitable interest of the debtor in certain real estate to the satisfaction of the judgment. A decree was made, and the interests ordered to be sold. After this the judgment creditor assigned the judgment, and shortly afterwards the assigne, instead of enforcing the sale, entered an order dismissing the suit.

*Held*, That by dismissing the suit, the property was discharged from the lien created by the decree, and that the lien of the judgment was also discharged from such other property of the defendant as had been conveyed away by him.

2. B, being in apparently independent circumstances, settled upon his wife certain property to be held as her separate estate ; soon afterwards, he became largely indebted.

*Held*, That in the absence of explanation as to the cause of this indebtedness, the natural and inevitable inference must be that the indebtedness existed contemporaneously with, if not anterior to the settlement.

3. Where the wife pays her husband's judgment creditor, and has the judgment marked to her use, the court will, on proper application, direct it to be entered satisfied, when it appears that the money paid by the wife to the judgment creditor was the money of the husband.

THE CASE is stated in the opinion.

WM. F. MATTINGLY and A. C. BRADLEY for plaintiffs.

T. T. CRITTENDEN and FRANKLIN H. MACKEY for defendants.

Mr. Justice MAC ARTHUR delivered the opinion of the court.

The case of Shepherd *et al. vs.* Brown *et al.* is a bill to restrain an execution at law.

Joseph F. Brown was the owner of two lots in square 101, and on the 18th day of May, 1870, he and his wife executed a deed of trust to one Whitney to secure the payment of an

indebtedness. Whitney died, and William B. Webb, by a process in equity, was appointed in his place to execute the trust, which he did by advertising the property, default having been made in payment of the debt, and Mr. George Mattingly became the purchaser. Mattingly conveyed to Fay, and there were two or three other conveyances before the property finally passed into the hands of Shepherd. Shepherd took the two lots and divided them into three, and conveyed one to Anna V. Moss and one to Isaac T. Filbert, his co-complainants, and retained the other himself. At the time the lots were unimproved, but they have since been improved by buildings.

In February, preceding the May on which the trust deed was executed, the Ocean National Bank recovered a judgment against Brown for $15,000; so that there appears to have been a trust and a judgment upon this property. A payment was made upon the judgment of $5,000. An assignment to the use of one Donnelly for the sum of $4,000 was also made, and, finally, on the 4th of March, 1872, Mrs. Brown, the wife of the defendant, obtained an assignment of the judgment, and subsequently entered a credit upon it for $7,355.

I ought to have stated that the Ocean National Bank issued an execution upon the judgment, which was returned *nulla bona.* The bank filed a creditor's bill for the purpose of subjecting the equitable interest of Brown in some real estate in the District to the satisfaction of the judgment. A decree was made in favor of the bank in that case, and these interests were ordered to be sold. Mrs. Brown, when she took the assignment of the judgment, dismissed Mr. Wilson, who had been the attorney in the bank case, and substituted her own attorney in his place. She then entered an order dismissing the suit. By dismissing the suit she, of course, discharged the lien which had been created by the decree in that case, and she also released thereby the lien of the judgment upon the lots which were embraced in this bill.

Now, it is contended, on the part of the plaintiffs, that

this discharge of the liens in favor of the judgment created by the decree in the equity suit, has operated to release the lien of the judgment upon their lots, and that she has forfeited her right to enforce the execution against complainants.

One other point was made, that when that sale took place, after paying the indebtedness and the expenses of the sale, there was a small surplus left, for which Mr. Mattingly, who was the purchaser, executed his notes to Mr. Brown. It appears that Mr. Brown transferred them to his wife, and Mr. Mattingly finally settled the amount of these notes with Mrs. Brown herself. There being some back tax that had been overlooked, an arrangement was made by which that was deducted from the purchase money, and the remainder was paid to Mrs. Brown. It is contended that she is now estopped from saying that that judgment was any longer a lien after it had been sold upon the trust deed, and she had realized the balance.

This point is not without a good deal of force, but perhaps it is not entirely necessary for us to decide that point in this case, because there is still another view upon which we think this bill may be sustained in addition to the first one which I have mentioned.

It was contended by the counsel for the complainants, that the money with which Mrs. Brown paid the judgment, was the money of the husband, and that instead of taking an assignment, she should have satisfied it. If this is true, we are unanimously of the opinion that it was a payment of the judgment, and not a purchase. This depends upon some circumstances that it may take me a few moments to state.

As far back as 1868, it appears that Mr. Brown was a man of considerable property. At that time he purchased the estate called " Clifton," a property within the District, for $40,000. He paid the consideration and directed the conveyance to be made to Mrs. Brown, which was done. At that time, as I have remarked, Mr. Brown appears to have been a man possessed of a good deal of property. Judgments to the amount of between three and four thousand

dollars existed against him; but if, as is claimed, he was then worth about seventy or eighty thousand dollars, the disproportion between his means and his debts would not invalidate a settlement on the wife.

It appears, however, that pretty soon after this, an immense indebtedness was developed against Mr. Brown, and Mrs. Brown began rapidly to acquire the interests of her husband in all his property. For instance, at the time that she discontinued the equity suit and released the lien of the judgments, a loan was negotiated with the Freedmen's Trust Co. for $35,000, and a trust was executed upon the lots released for the security. It appears that $18,000 of the $35,000 was used for the purpose of redeeming property that had been under some trust executed by Mr. Brown, and the property was conveyed to Mrs. Brown. It appears also that Mr. Van Riswick had purchased some property, real estate, of Mr. Brown, at a sale in an equity suit. It appears also that property was sold under a trust deed by Mr. Jones and bid in by her. There was a surplus of some $1,700 over and above the indebtedness and the expenses, which was directed to be paid also to the wife. A house and lot was conveyed to a man by the name of Stout, for which he executed his notes amounting to $2,000. But that was a mere nominal transaction, as he never expected to pay them, and never did pay them. Afterwards he conveyed this property to Mr. Rohrer, and his notes were returned to him, Rohrer conveying back to him, however, a house and lot, which he immediately transferred to Mrs. Brown.

And so the conveyances and interest were acquired by Mrs. Brown from time to time. All these transactions were upon continued declarations that this arrangement was for the purpose of applying Mr. Brown's property to the payment of his debts, and no doubt that was the intention of Mrs. Brown in taking the conveyances, and her declaration to Mr. Jones that she had concluded to take the business into her own hands, was correct.

It appears that Mr. Brown had, from some cause or other, become incompetent to take charge of his property, and Mrs.

Brown assumed the business part connected with the estate.

At the time the release was executed upon the lots embraced in the equity suit, another lien was also released, said to be worth $10,000, of which Mr. Crittenden had at some time been the holder.

All these transactions, we are of opinion, could be investigated by a creditor of Mr. Brown. Shepherd, however, is not in the condition of a creditor, and, therefore, the allegation of the bill that these conveyances were fraudulent, perhaps presents no point of which he can take advantage, because he does not stand in the situation or relation of a creditor. But we think all the transactions may be referred to in this case, simply for the purpose of showing that from first to last it was the property of the husband that went to the payment of all these debts, the judgment among the others.

The reply to this is, that the property which Mrs. Brown acquired in 1868—the Clifton property—was her separate estate; that upon that estate she negotiated a loan with the Freedmen's Bank of $20,000, for the purpose of paying this judgment; but instead of paying it, as I have said, she took an assignment. It seems improbable that so soon after 1868, the development of such a great burden of debt against Mr. Brown could have sprung up without any previous obligation on his part. There is no explanation at all given of Mr. Brown's business, or how he became embarrassed to the extent of that indebtedness after 1868; and we think it is not only a natural, but an inevitable inference, that the great indebtedness which is the excuse for these transfers of property, and which was the cause of so much embarrassment to Mr. Brown, existed contemporaneously with, if not anterior to, the conveyances of the estate to Mrs. Brown.

We are, therefore, of the opinion, on the two points which I have elaborated, to wit, the first and last, that the prayer of this bill should be allowed; that the judgment upon this property should be entered satisfied so far as the complainants are concerned, and a decree to that effect may be prepared.